Alvarado is, as the court's probably observed, an offshoot of our prior discussion. Basically, the Alvarado case, based on what Judge Fease said, was he thought it was too many districts, too many this, too many that. We then took that discussion and we put it into 28 different classifications. Excuse me, 27 different classifications. I have two questions about it. First of all, why didn't you file 27 collective actions? Excuse me, interventions. What? 27 cases with each individual named. I know. I'm asking why didn't you file 27 collective actions? Why didn't I file 27? Or could you have? I could have, but I did not want to run into the wrath of Judge Fease, who said, no, there's no collective action. They tried to have me sanctioned for filing what I did file. So, you know, this is a case that's gone on, FLSA litigation's gone on in LAPD for years. I mean, legally file 27 separate collective actions and have each of them evaluated separately. Could we have? Yes. I thought it was just as easy to do the evaluation by ourselves and then parse them out and file. Well, the problem is, isn't the problem that the standard and jointer is tougher? Or is the standard and jointer tougher? I don't think so, Your Honor. I think we had a common issue. Say that. Huh? There are cases that say that. Well, I'm applying it to this particular set of facts. I know, but I'm asking whether the standard is tougher. It has to be, in some sense or other, a single, a joint transaction. I mean, it can be a policy or practice, and I guess that's what you're alleging. But it does seem to be somewhat tougher. And assignments. You know, we were narrowing them down by assignments, and that's what we were trying to do, to not have the issues that would destroy the sort of a collective action, but a de jure collective action. Counsel, isn't Coghlan v. Rogers, though, kind of fatal to the jointer approach in this case? I'm not sure, Your Honor. It doesn't help you, does it? It doesn't help me, but I don't think it really hurts me that much. That was my assessment. And I will say that because, first and foremost, we still have the – when you look at the standards for jointer, we have common issues. We have common facts. We have a much smaller group to keep them held together with. And the alternative, while the court doesn't think we'll end up with 2,600, I am pretty sure we'll end up with 600. All right, so that's the next question. Why didn't you just file 600 cases? Because the reaction I got from the U.S. District Court judges with the 27th – Well, but they couldn't have thrown the 600 cases out. No, they couldn't have, but it would have been – And then what would they have done? They probably would have consolidated them, as apparently they did in another instance, and you would have been in the same place. Well, they consolidated for purposes of settlement with all the judges' permission, and they settled the 27 first-name plaintiffs in those cases, which is – under the single judgment rule, then we proceeded to have the right to appeal. So that's the way we went with that. So in either event, there was no – I'm trying to understand whether there was some way you could have teed this case up. I couldn't find one. Well, you could have filed the 600 individual cases and then probably ended up proceeding jointly anyway, which gets to the question of why are we fussing about these other mechanisms. But if you would have filed the 600 cases. $37,000 in filing fees. I already paid $30,000 in filing fees just in a 60-day period. No, it's filing fees. Yeah, and then we'd have to get new retainers, print out 600 complaints, and whether we could mechanically have done that with a – Well, they've done it. It's been done. Oh, I know, and I've – well, I don't know whether I'm going to be there yet. I mean, I hate to say it, but I think that the commentary is that this is the second best way to do it. I do not want to see – the judges were complaining this is tying up their dockets, and I understand that, and I understand that this is going to become quite a mess if we go that way, and that's what I'm trying to avoid, to be honest. I have a procedural question. In this instance, is this instance procedure – this case procedurally in the same posture as the other one in that the people appealing – that the first party settled down and the people appealing are the ones who tried to join in? Yes, which is pretty much all of them. But there's been no issue raised in this case as to the appealability by the joint parties. I'm not aware of any issue of appealability. As to the original appealability, I didn't see that as an issue, Your Honor, to be honest. Well, that's nice, but that's just an issue. That's another – I know, that's another. We're done with that case. Thank you very much. Thank you, Your Honor. Good morning again. I'm Brian Walter for City of Los Angeles. In this case, you had essentially an attempt to – an end run to try and get around Judge Peace's decertification order. Well, it's not an end run. If his order was that it doesn't fit within the joint – the collective action, but there's a way to bring the case.  We probably would not have brought a – we wouldn't have been able to bring a mis-joinder motion because they wouldn't have been joined. Right, and you probably would have moved to consolidate because you don't want 600 cases. Or somebody would have moved to consolidate, right? Perhaps. One thing I do want to point out, though, is – So what's the difference? If you have 600 cases in the same place, either way? Well, the difference is, in this case, there were 28 separate lawsuits filed. As the record shows, when we tried to take discovery from the name plaintiffs on those 28 cases, 12 of them just didn't show up. Their cases got dismissed because they didn't want to be part of the case. The reality of these types of cases, when you have 600 cases, is that's what's going to happen in a lot of the instances. You're going to get people who are going to say, you know what, this isn't – I thought I was just signing up to be part of a collective action and was going to get a check at the end of the day. If I actually have to sit for a deposition, that's not something I want to do. And that's the reality of these types of cases, and that's why decertification – that's why employers move for decertification in these situations, in part, is because the individual plaintiffs who are joining on to what other people are doing don't necessarily want to do that when they have their own individual case. And so I think that's part of the reality here. The plaintiffs in this case also didn't make any effort to – or didn't make sufficient effort to actually address the issues in Judge Fease's decert order as far as what they needed to show to be similarly situated. For example, if a group of 10 plaintiffs – Here isn't similarly situated. I'm sorry? The standard for joinder is not in terms similarly situated, right? Not exactly, but it's close. It is a little more stringent standard, I think, as the court has noted. But they have to show that a common transaction or occurrence and a common question of fact or law – if you had a situation, perhaps, where some of the decertified plaintiffs had said, okay, there's five of us, we all had the same supervisor, that supervisor told us you can't submit overtime less than an hour, they would have a case. That would be a situation where that would fit within Judge Fease's order as far as they would have individual claims, and that's something they could bring. But instead, what they did here is just threw in and said, okay, everyone who ever might have worked at this station for a month or two, these 120 are going to be part of a case, and that doesn't meet the joinder standard. That's not the same – that's not a common occurrence or transaction, and that's something that's going to make it difficult. In the case of Coghlan, they allege – I mean, we're back to the same problem again. They allege a patent or policy of not paying this overtime, right? They allege it. Yes. So at this stage of this case, since they were dismissed without prejudice in the other one, is the whole record from the other case pertinent now, or do they get to go forward for joinder purposes on their allegation? Well, I think the record is relevant because otherwise you're going to have the same lawsuit over and over and over again and getting dismissed over and over again. That's why it shouldn't have been dismissed the first time. But once you – if it was dismissed without prejudice, then presumably it's without prejudice, i.e. there's no issue of preclusion or anything, and why don't they get to have the joinder evaluated on the complaint now? Well, they are having the – these district court judges did evaluate joinder based on the complaint, and also – The complaint was that there is a common policy. That was the complaint, right? Right. But I think to ignore the prior ruling of the court that there is not a common policy, to me that doesn't make sense for – Then what is it? What's the legal – but they were dismissed without prejudice. Correct, but they're – Found by whatever happened substantively in the other case. But the without prejudice, I think we're talking about two different things. The without prejudice is without prejudice to asserting their own individual claims. That's exactly what – that's what Judge Fease said in his order. They could do that in these cases, but what they're trying to do is collect them again, which is what Judge Fease previously ruled on. If in the other case it was an abuse of discretion standard and it wasn't a summary judgment determination, then why is it binding – why don't they get to do it again? I don't understand that. I mean, if it's not issue of preclusion, what is it? Well, I mean, in that sense it may be issue of preclusion. It doesn't see – How can it be issue of preclusion when it wasn't a determination on the merits? You told me it wasn't. Well, it was a determination on the – not on the merits of the entire case, but it was a determination on a specific issue that's relevant to the case management and relevant to the determination of whether or not there should be a collective action. How does the judge's decision in the Nolan trials bear on issue of preclusion? As I understood it, Judge Fease did this because he wanted to get a sense of where these facts led. They did that, a lot of time spent, a lot of witnesses, made a determination. That took essentially the same information that was given with respect to the other people, same initial affidavits and so on, and he came to a conclusion. In other words, how does an exemplar trial fit into, in this particular case, Rule 20 and 21? How does that work? Well, I think the exemplar trial gives the court the perspective to determine whether or not these events which the plaintiffs are alleging are related together, really are related together. But what I'm saying, if Judge Fease determined that they are not to get to the issue of preclusion concept, does the determination made with respect to the Nolan case plaintiffs, can that be applied in any way to the other plaintiffs in the action, the hundreds of other plaintiffs? I don't know that there was a specific determination made in Nolan. I mean, the Nolan case involved looking at four individual officers. So I think... Let's deal with the policy of the department. They allege that what you really have going here is more than an hour being done on a regular basis. It doesn't matter that the written policy doesn't apply, and it's certainly not being used by people. So here you have a trial about that issue, and the judge makes a determination. Does that have any bearing on the department's conduct? And if so, does it change the burden of proof in any way? Well, the issue in the trial was where the individual claims of the four people, and you had a jury verdict found for the department on some issues and found for the plaintiffs on some of the issues of that. As far as what impact that has on the court is, I think that was a factor in Judge Feese's... But it can't possibly be issue preclusion on different plaintiffs. I don't believe it's issue preclusion, Your Honor. I don't. But it's a fact that informed Judge Feese's decision on decertification because one of the issues for decertification is case management, and he saw what it was like to look at just four of these claims. Well, why is one of the factors case management, by the way? When the statute says similar... We're going back to the other case now, but when the statute says similarly situated, it doesn't have the kill-ass action case management provisions. But when you say similarly situated, as we've talked about before, that's not really defined. Well, I understand that, but I'm wondering why case management is a... You try a lot of separate things, maybe that proves they're not similarly situated, but case management as such isn't a factor. I think when you say, okay, are these plaintiffs similarly situated, Judge Feese can look back to a case involving the exact same counsel, parties, and so forth and say, based on what I saw in that jury trial, these are not likely to be similarly situated and based on the rest of the evidence presented in the motion by both parties, that these are not going to be similar types of claims. Are the orders in these cases, the opinions disallowing jointer, based on issue preclusion? What did they do with Judge Feese's findings? Did they refer to them? Did they use them? Did they base the finding on their determination on the pleadings, or did they base it on what Judge Feese decided? I think that some of the orders definitely looked at, or many of them looked at what Judge Feese had done, looked at the pleadings, and then the judges, all 13 of the judges, made their own decision on whether or not these plaintiffs were appropriately joined. So that's, I don't think they specifically applied issue preclusion. I think that's an interesting question, which I don't think was particularly briefed, about whether they could take into account the findings on the decertification in the other case. Maybe they can. I don't know. But it seems odd to me. But as a practical matter, I think you'd run the risk of, so these cases get dismissed, then they refile another set, and then you sort of have this endless serial refiling if they can't look at what's happened in other cases. Because they're trying to find some way to litigate the case. So your proposal is that the only way they can litigate the case is to each individually file a case, and then they all get consolidated, and then the judges have the same problem again, essentially, except maybe fewer of them. Fewer, but I mean, that's the same situation like the Walmart v. Dukes, or Dukes v. Walmart case. That's the same thing there. I mean, it's... Well, except this is a lot more cohesive than that, in the sense that this is all in one city under one set of rules. I mean, the whole thing that was so odd about the Walmart case is that the policy was no policy, essentially. The policy was not to have a policy. Here you say we do have a policy. Right, but the plaintiffs are trying to say that they're trying to make a similar argument to what was made in Walmart by the plaintiffs, that in fact that there is this sort of unwritten... Walmart was this unwritten discrimination based on gender. It was more of the structural kind that I was describing, was that by letting individual managers do what they want, it results in discrimination. Not so much that Walmart was implicitly discriminating. It was a very complicated and weird theory. Right, but the effect at the end of the day is the same as far as the plaintiffs. The potential members of the Walmart class had to file individual actions, and that, I mean, that's... Well, suppose... I don't know about that. In fact, the case went forward in pieces, and that's what they were trying to do here, go forward in pieces. In other words, that was a $2 million person national case. It didn't preclude cases for individual cities or individual locations, individual stations, and that's what they're now doing, individual stores in that instance. My understanding is it has gone forward in subcategories, and that's what they were trying to do here. But we're not saying they couldn't have grouped plaintiffs together who were similarly situated. They just didn't do it properly in this instance. They could just knock out the people who aren't, in fact, in that station, for example. Well, but as Judge Fease looked at it, there's a lot more to it than that, because you have somebody who's at five different stations, and then you look at four shifts per station, multiple assignments, and you start getting into this sort of extremely complicated matrix of... But they have filed 28 new collective actions. I don't think so, because I think we'd be in the same position we're in right now. Well, if they picked their people right. In other words, was there anything in the earlier dismissal of the mega collective action that would have precluded smaller collective actions? Not if they could find similarly situated plaintiffs, but I think the reality of that order is that Judge Fease recognized it would be almost impossible to find more than maybe a few plaintiffs, a handful of plaintiffs, who actually would be similarly situated based on what he saw in the Nolan trial and based on the evidence presented in the DSERT motion. Well, why couldn't it just be everybody who worked in X station under Y supervisors? Well, that would be one or two or three people. Because the problem you have is... Only in X station, but if they worked in X station. Well, so that's what they did. They said people who worked in X station. The problem is that's not a fixed finite group. That's a very fluid number. Because then once you start looking at other stations, other supervisors, other assignments, other ranks, people who promote, you start getting away from similarly situated when you group them together. All right, thank you very much. This has been interesting. It's all completely uncharted territory. May I take a few more moments? Yeah, you have a little bit of time. Let me just quash all thoughts about Nolan. Nolan was not a case where we had similarly situated persons with the people in the two cases we have here, or the 28. Nolan was assistant watch commanders and watch commanders, two to three per shift. Not the patrol force, not the rest of the department. It could never have been collateral estoppel or res judicata for anything because it decided a finite, specific group. Because these pages weren't parties, period, the end. Yes. What's the purpose of Nolan? Nolan was to bring in action on behalf of people who were not eligible for collective action. What? They were lieutenants and sergeants holding watch commander positions, the people that are supposed to be recording the time, who were themselves complaining about not being paid the time. All right, so as far as you're concerned, Nolan is utterly irrelevant to anything. Right. Then I think I'm done. Thank you. Thank you, Your Honors. Thanks to both of you. We will sort this out, the case of Alvarado v. City of Los Angeles. And all of its friends are submitted. Thank you very much.
judges: Berzon, M. Smith, Linn